JOHN PATTEN *vs.* WILLIAM T. PEARSON.

*Sale of trust property to trustee may be disaffirmed—when.*

If the indorser of a note, secured by a mortgage containing a power of sale can disaffirm an auction sale of the premises to the assignee of the mortgage, he must do so within a reasonable time.

Where a sale was made in Aug., 1859, and no disaffirmance attempted until Dec., 1861, when the indorser was sued on the note, and the property had passed to third persons, it was held too late.

ON REPORT.

ASSUMPSIT for money had and received. Writ dated Dec. 11, 1861.

The plaintiff put in a witnessed note dated 'Chelsea, Oct. 15, 1858,' signed by Augustus W. Pratt, payable to the defendant, or order, in three years, with interest semi-annually, indorsed by the defendant to Bragg and Patten and by them indorsed to the plaintiff.

On the note was an indorsement of the following tenor:

'Received Aug. 1, 1859, $1,081.'

The defendant contended that much more had been paid upon the note than was indicated by the indorsement, by sale of the property mortgaged to secure the note. The undisputed facts upon this point were, that the plaintiff and one Bragg were partners in the lumber business in Bangor, under the firm name of Bragg & Patten; that the defendant being indebted to them in the sum of about $2,090 and embarrassed, turned out to them this note in Oct., 1858, with the mortgage given by the maker to secure it, the mortgage being then in the registry of deeds in Massachusetts. On Nov. 1, Bragg and Pearson being in Boston, Pearson assigned the mortgage and delivered it to Bragg in completion of the bargain. The mortgage contained a power of sale, authorizing the mortgagee or assigns to sell on breach of the conditions.

After the failure of payment of the first semi-annual interest

which fell due, Bragg & Patten employed one Fiske to sell the mortgaged premises. He advertised it in due form and exposed it at auction sale, and bid it in; whereupon Bragg, on Aug, 16, 1859, executed a deed thereof to Fiske who bid it in for $1,950. From the amount of the sale Fiske deducted the principal of the prior mortgage, interest on the note at the time of the sale, interest on the prior mortgage and expenses of sale, and the balance, $1,081, he indorsed on the note in suit.

On Sept. 1, 1859, Fiske conveyed the premises to Bragg & Patten, no consideration being paid on either side.

In April, 1860, Bragg & Patten dissolved partnership; and, in dividing their assets, Patten took the note and Bragg the mortgaged premises, Bragg & Patten indorsing the note to Patten, and Patten conveying his interest in the premises to Bragg.

On March 12, 1861, Bragg sold and conveyed the premises to one Sargent, the consideration stated in the deed being $2,200.

The defendant contended that the sum received by Bragg from Sargent, should be accounted for by the holder of the note as part payment of it; that that was the first sale, the one by Fiske being a sham and the indorsement of $1,081 false, no sum having been received; and that the mortgaged estate was really held in trust for the security of this note.

On this point the defendant put in the deposition of Fiske, in which he deposed substantially, that he was employed by Bragg to advertise and sell as agent the mortgaged premises, and to bid them in unless they brought enough to cover the mortgages; that he was present at the auction on Aug. 1, 1859; that no one except himself and auctioneer were present; and that the deponent bid off the premises for Bragg. The defendant also put in office-copies of the mortgage, assignment thereof, deed to Fiske, Fiske's deed to Bragg & Patten, and Bragg's deed to Sargent.

The plaintiff testified substantially that he and his partner, Bragg, employed Fiske to sell the mortgaged premises, Bragg making the bargain with him; that Fiske made the indorsement upon the note; and that the plaintiff gave no instructions to Fiske or any one else to bid in the property.

Bragg, called by the plaintiff, that his only instructions to Fiske were to sell to the highest bidder, and did not instruct Fiske to bid it in, but was disappointed because Fiske did bid it in, and should not have taken it of Fiske had he been responsible.

The jury returned a verdict for the plaintiff for $2,267.

The jury returned the following answers to the following questions respectively :

1. Was the purchase made by Fiske at the auction sale, of the mortgaged premises, for himself, or for Bragg & Patten, or either of them ?

Ans. The jury do not agree on this point.

2. How much is due on the note deducting the indorsement thereon ?

Ans. $2,267.

3. How much is due, deducting the amount received by Bragg for the sale of the house?

Ans. $1,016.49.

4. Was the sale by Fiske fraudulently managed, so that it was sold for less than its worth, in order to obtain an absolute title thereto under its true value ?

Ans. The jury have no evidence that it was so sold.

The defendant seasonably filed a motion that the verdict be set aside as against law and evidence; because the damages are excessive, and because the answers to 2d and 3d questions were against law and evidence.

The case was finally reported to the full court to determine from all the admissible evidence and findings of the jury (with a right to draw inferences), what sum the plaintiff is entitled to recover, and to change the verdict to express that sum.

*J. A. Peters*, for the plaintiff.

*J. S. Rowe*, for the defendant, cited *Howard* v. *Ames*, 3 Met. 311; *Downes* v. *Gravebrook*, 3 Maine, 200; *Middlesex Bank* v. *Minot*, 4 Met. 325–329; *Montague* v. *Dawes*, 14 Allen, 369; 1 Wash. on Real Prop. 499, 500; 1 Story's Eq., §§ 321, 322; Hill on Trusts, 159,* 536.*

Patten *v.* Pearson.

Walton, J.   It is undoubtedly a rule of very general application, that when a trustee of any description, or any person acting as an agent or attorney for another, sells trust property, and becomes himself the purchaser, either directly or indirectly, the *cestui que trust*, or person for whom he acts, may, at his election, disaffirm the sale, provided he does so within a reasonable time.   The law does not allow him to lie by for an unreasonable length of time, and then disaffirm the sale, especially where the rights of third persons have in the mean time attached.   And it has been doubted whether this rule ought to be applied at all to public sales made under a power contained in a mortgage.   It seems that in England, a mortgagee is allowed to bid under an order in chancery for the sale of a mortgage estate.   *Ex-parte* Marsh, 1 Madd. 148.   And in New York it is declared by statute, that a mortgagee may purchase at a sale at auction under a power in his mortgage.   4 Kent's Com. 10th ed., p. 517, *note.*   It is quite certain that in such cases, where the property mortgaged is not sufficient to pay the debt, the mortgagee will be quite as anxious to have the property sell for all it is worth as the mortgagor.

But whatever the rule may be in such cases, it is well settled that if the mortgagor elects to treat the sale to the mortgagee as invalid, he must signify his intention to do so within a reasonable time.   And if one collaterally interested, as a surety or indorser on the note secured by the mortgage, has a right to interfere and insist that such a sale shall be treated as a nullity (which we think may well be doubted), it is clear that he ought to exercise his right to do so in a reasonable time.

In this case the sale was made in August, 1859; and when this suit against the defendant, to recover of him as indorser, the balance due on the note was commenced, neither he, nor the mortgagor, nor any one else, so far as appears, had intimated an intention to disaffirm the sale, or had claimed that it was not fairly made, and for a fair price.   We think the attempt made to disaffirm it at the trial of this cause was too late.

Besides, if the attempt should succeed, the result would not be

what the defendant claims. He could not claim what the property was subsequently sold for. That was *inter alios*. The effect would be that the mortgagor's right of redemption would not be sold at all; for if the first sale under the power is avoided, the subsequent sales will of course become inoperative. And then, instead of recovering only the balance due on the note, we perceive no reason why the plaintiff would not be entitled to recover the whole amount for which it was given, with interest. The defendant would then have a right to be subrogated to the rights of the mortgagee, but whether he would thereby better his condition may well be doubted. Clearly he has no right to treat the property as sold for the purpose of passing the title, and to disaffirm the sale for the purpose of claiming a larger price. He must either affirm or disaffirm the sale as a whole, and abide the consequences.

But, for the reasons before stated, we think the sale cannot now be avoided. The rights of third parties have intervened, and the claim to avoid it was not made within a reasonable time. Nor are we satisfied that the defendant is a proper party to avoid it; nor that it could be avoided in this collateral way by any one.

Treating the sale, then, as valid, nothing remains but to ascertain the amount due upon the note. The parties have agreed that the full court shall fix the amount notwithstanding the verdict of the jury. And the only matter likely to mislead is the fact that the interest on the note in suit was paid to Aug. 1, 1859, but was not indorsed. The amount indorsed upon the note was the balance in the holder's hands, after the interest to Aug. 1, 1859 ($105.21), had been taken out. The amount for which the plaintiff is entitled to judgment, is the face of the note, $2,215, less the indorsement, $1,081, and interest from Aug. 1, 1859. Principal, $1,134. Interest, $832.73. Total, $1,966.73. The verdict should be reduced to the latter sum, on which it will be the duty of the clerk to add interest from the time of the rendition of the verdict to the date of the judgment, as provided by law. R. S., c. 77, § 23.

The certificate should be as follows:

> *Verdict reduced to $1,966.73. Judgment on the verdict, when thus reduced, with interest from time of the rendition of the verdict to the date of the judgment.*

Appleton, C. J.; Cutting, Kent, and Barrows, JJ., concurred.